ACCEPTED
13-15-00260-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/16/2015 4:26:17 PM
Dorian E. Ramirez
CLERK

No. 13-15-00260-CV

Court of Appeals, Thirteenth District
Corpus Christi – Edinburg, Texas

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

9/16/2015 4:26:17 PM

DORIAN E. RAMIREZ
Clerk

R.E. Cardenas a.k.a. Ricardo Evaristo Cardenas a.k.a. Rick Cardenas

*Appellant*

vs.

Nancy Crockett

*Appellee*

Appeal from the 197th Judicial District Court, Cameron County, Texas
Cause No. 2014-DCL-01833-C

BRIEF OF APPELLEE

**J. Joseph Vale**
State Bar No. 24084003
jvale@atlashall.com
**Dan K. Worthington**
State Bar No. 00785282
dkw@atlashall.com
**Sarah A. Nicolas**
State Bar No. 24013543
snicolas@atlashall.com
**ATLAS, HALL & RODRIGUEZ, LLP**
818 Pecan/P.O. Box 3725
McAllen, Texas 78501
(956) 682-5501 (phone)
(956) 686-6109 (facsimile)

**Jason R. Mann**
State Bar No. 24004793
jmann@thelawmann.com
1309 N. Stuart Place Road,
Suite A
Harlingen, Texas  78552
(956) 428-4114 (phone)
(956) 428-9494 (facsimile)

Attorneys for Appellee Nancy Crockett

September 16, 2015

# Table of Contents

Index of Authorities ....................................................................................4

Statement Regarding Oral Argument ........................................................6

Issue Presented...........................................................................................7

Statement of Facts......................................................................................9

    I.     Parties and pleadings.............................................................10
        A.    *Plaintiff R.E. Cardenas a.k.a. Ricardo Evaristo Cardenas a.k.a. Rick Cardenas.* ................................................10
        B.    *Defendant Nancy Crockett.* ........................................10

    II.    Summary judgment evidence...............................................10
        A.    *The parties negotiated in writing.* ..............................11
        B.    *Crockett tendered the offer on March 5, 2014 with a March 7, 2014 deadline to accept.* ...........................11
        C.    *On March 6, 2014, Crockett extended the deadline to accept to March 12, 2014.* .......................................12
        D.    *Cardenas tendered a "Proposed Counter-Offer" on March 10, 2014.* ......................................................12
        E.    *Cardenas attempted to "accept" Crockett's earlier offer on March 12, 2014, the extended deadline.* ..............13

    III.    The summary judgment proceedings. ...................................15
        A.    *Cardenas's Proposed Counter-Offer terminated his ability to later accept Crockett's offer.* ....................15
        B.    *Cardenas's only response was that the Proposed Counter-Offer was not a counteroffer.* ...................16
        C.    *The trial court granted summary judgment.* ...........16

    IV.    The motion for new trial proceedings. ..................................16
        A.    *Cardenas's timely motion for new trial stated no grounds for new trial.*..............................................16
        B.    *Cardenas's untimely "supplemental" motion for new trial—filed seventy-five days after judgment—asserted new grounds.* ..................................................17

V. The appeal. ...................................................................18

Summary of the Argument.................................................19

Standard of Review ...........................................................21

Argument............................................................................22

    I. Cardenas's counteroffer terminated his ability to accept Crockett's prior offer. {Response to Appellant's Argument § I.B.} ............................................................22
        A. *Cardenas's counteroffer terminated his power of acceptance, and no exception permitted him to later accept Crockett's offer.* ..................................23
        B. *Cardenas waived his option contract theory.* .........26
        C. *The parties did not agree to make Crockett's offer irrevocable.* ..................................................28
        D. *The alleged option lacked consideration.* ................30

    II. Cardenas's new argument that he accepted the contract prior to tendering a counteroffer fails. {Response to Appellant's Argument § I.A.}............................................................34
        A. *Cardenas waived his theory that he accepted and created an enforceable contract on March 7th.* ...................35
        B. *No contract was formed prior to the Proposed Counter-Offer.* ..................................................37

    III. The Court should affirm the trial court's summary judgment. ...........41

Prayer ................................................................................42

Certificate of Rule 9.4(i) Compliance...............................43

Certificate of Service ........................................................44

Appendices.........................................................................45

# Index of Authorities

Cases

*1464-Eight, Ltd. v. Joppich*,
  154 S.W.3d 101 (Tex. 2004) .............................................................. 24–25, 32

*Advantage Physical Therapy, Inc. v. Cruse*,
  165 S.W.3d 21 (Tex. App.—Houston [14th Dist.] 2005, no pet.) .......... 22, 37, 38

*Am. Nat'l Ins. Co. v. Warnock*,
  114 S.W.2d 1161 (Tex. 1938) ................................................................37

*Amedisys, Inc. v. Kingwood Home Health Care, LLC*,
  437 S.W.3d 507 (Tex. 2014) ................................................................21

*Boerjan v. Rodriguez*,
  436 S.W.3d 307 (Tex. 2014) (per curiam) ............................................21

*Bryant v. Cady*,
  445 S.W.3d 815 (Tex. App.—Texarkana 2014, no pet.) ......................31

*City of Houston v. Clear Creek Basin Auth.*,
  589 S.W.2d 671 (Tex. 1979) ......................................................... 26, 27

*City of Keller v. Wilson*,
  168 S.W.3d 802 (Tex. 2005) ................................................................21

*Cortina v. P.I. Corp.*,
  385 S.W.3d 613 (Tex. App.—Corpus Christi 2012, no pet.).................. 21, 29, 32

*Dempsey v. King*,
  662 S.W.2d 725 (Tex. App.—Austin 1983, writ dism'd w.o.j.).........................38

*Echols v. Bloom*,
  485 S.W.2d 798 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd
  n.r.e.).............................................................................25, 30, 32

*Garrod Invs., Inc. v. Schlegel*,
  139 S.W.3d 759 (Tex. App.—Corpus Christi 2004, no pet.).................. 22, 23–24

4

*Hott v. Pearcy/Christon, Inc.*,
  663 S.W.2d 851 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ........... 24, 25, 28–29

*Jatoi v. Park Ctr., Inc.*,
  616 S.W.2d 399 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.)............... 38, 40

*Joiner v. Elrod*,
  716 S.W.2d 606 (Tex. App.—Corpus Christi 1986, no writ) .............................39

*Moritz v. Preiss*,
  121 S.W.3d 715 (Tex. 2003) ...................................................................... 27, 28

*N. Nat. Gas Co. v. Conoco, Inc.*,
  986 S.W.2d 603 (Tex. 1998) ...................................................................... 30, 31

*Pena v. Je Matadi Dress Co.*,
  No. 01-06-00632-CV, 2008 Tex. App. LEXIS 678, 2008 WL 256972
  (Tex. App.—Houston [1st Dist.] Jan. 31, 2008, no pet.) (mem. op.) 27, 28, 36–37

*Roark v. Stallworth Oil & Gas, Inc.*,
  813 S.W.2d 492 (Tex. 1991) ................................................ 28, 30, 31, 33, 34, 36

*Smithkline Beecham Corp. v. Doe*,
  903 S.W.2d 347 (Tex. 1995) ...................................................................... 27, 36

*Thurmond v. Wieser*,
  699 S.W.2d 680 (Tex. App.—Waco 1985, no writ) .................................... 23, 24

*Womack v. Dalton Adding Mach. Sales Co.*,
  285 S.W. 680 (Tex. Civ. App. 1926, no writ).....................................................25

Statutes
TEX. R. CIV. P. 166a ................................................................................. 21, 26, 35

TEX. R. CIV. P. 329b.................................................................................... 16, 17

Other Authorities
RESTATEMENT (SECOND) OF CONTRACTS § 39 (Am. Law Inst. 1981).............. 23, 24

## Statement Regarding Oral Argument

This is a straightforward case in which the trial court properly granted Defendant Nancy Crockett's traditional motion for summary judgment because the summary judgment evidence established, as a matter of law, that the parties did not have an enforceable contract for the sale of real property. No unusual or complex questions of law or fact are presented, and for this reason, Crockett does not believe oral argument is necessary. If, however, the Court requests oral argument, Crockett would welcome the opportunity.

## Issue Presented

In contract negotiations, a counteroffer terminates the offeree's ability to accept the offeror's prior offer, unless an exception applies. After the defendant made an offer to sell land, the plaintiff tendered a counteroffer and then later attempted to accept the defendant's earlier offer. Did the trial court correctly grant summary judgment in favor of the defendant because there was no enforceable contract between the parties?

No. 13-15-00260-CV

Court of Appeals, Thirteenth District
Corpus Christi – Edinburg, Texas

---

R.E. Cardenas a.k.a. Ricardo Evaristo Cardenas a.k.a. Rick Cardenas
*Appellant*

vs.

Nancy Crockett

*Appellee*

---

Appeal from the 197th Judicial District Court, Cameron County, Texas
Cause No. 2014-DCL-01833-C

---

BRIEF OF APPELLEE

Appellee Nancy Crockett files this Brief pursuant to Rule 38 of the Texas Rules of Appellate Procedure. Parties will be referred to as in the trial court or by name. References to the Clerk's Record will be to C.R. at {page}. References to the Appendices will be to App. Tab. {letter}. Exhibits will be referred to as follows:

| | |
|---|---|
| Plaintiff's Exhibit: | Pl.'s Ex. {letter} |
| Defendant's Exhibit: | Def.'s Ex. {number} |

## Statement of Facts

In March 2014, a landowner and a potential buyer negotiated a possible sale of land. The parties conducted their negotiations in writing via emails between their attorneys. The landowner made an offer of sale with a set deadline, which she later extended. Two days before the extended deadline, the potential buyer responded with a counteroffer that proposed material modifications to the landowner's offer. When the landowner did not respond to the counteroffer, the potential buyer became concerned and only then attempted to accept the landowner's offer (on the date of the extended deadline).

The potential buyer sued the landowner to enforce the "contract." The landowner-defendant moved for summary judgment because the potential buyer-plaintiff's counteroffer terminated his right to accept the landowner's prior offer, and the trial court granted summary judgment. The potential buyer-plaintiff appeals, and the sole question before this Court is whether the summary judgment evidence demonstrates as a matter of law that the potential buyer-plaintiff did not accept the landowner-defendant's offer, either because his power of acceptance had been terminated by the counteroffer or because he did not fulfill all the requirements of acceptance.

# I.    Parties and pleadings.

## A.    *Plaintiff R.E. Cardenas a.k.a. Ricardo Evaristo Cardenas a.k.a. Rick Cardenas.*

Cardenas was the potential buyer and is the plaintiff in this suit.  C.R. at 4 (original petition – live pleading).  He filed suit claiming breach of contract and seeking specific performance or, alternatively, damages.  C.R. at 6–7.  He also seeks attorney's fees, interest, and costs.  C.R. at 7.  Cardenas was represented by attorney Jeffrey G. Mathews during the negotiations for the sale of the property. *See, e.g.*, C.R. at 52 (Def.'s Ex. 2).

## B.    *Defendant Nancy Crockett.*

Crockett was the landowner and is the defendant in this suit.  C.R. at 23 (original answer – live pleading), 27.  Crockett filed an answer with a general denial and several affirmative defenses.  C.R. at 23.  Crockett was represented by attorney Gene McCullough during the negotiations for the sale of the property. C.R. at 37 (McCullough Affid. ¶ 2).

# II.    Summary judgment evidence.

Crockett filed a traditional motion for summary judgment on the basis that Cardenas did not accept her offer.  C.R. at 27.  The summary judgment evidence was as follows.

## A.     *The parties negotiated in writing.*

McCullough testified by affidavit that the parties conducted their negotiations in writing.  C.R. at 38 (McCullough Affid. ¶ 4).  This testimony was not controverted.  The negotiations (as shown in emails and attachments) were attached to McCullough's affidavit as summary judgment evidence.  *Id.*

## B.     *Crockett tendered the offer on March 5, 2014 with a March 7, 2014 deadline to accept.*

McCullough emailed Crockett's offer to Mathews on March 5, 2014.  C.R. at 40 (Def.'s Ex. 1).  McCullough also provided a paper copy of the offer, signed by Crockett, on the same date.  The offer stated that it must be accepted by March 7, 2014 at 5:00 p.m.  C.R. at 50 (Def.'s Ex. 1 ¶ 24).  The sales contract required both parties to sign the agreement and for Cardenas to deliver the earnest money to a title company.  C.R. at 41 (Def.'s Ex. 1 ¶ 5).  The offer did not state that it was irrevocable, nor did it reflect any separate consideration to keep the offer "open" for any defined period of time.  *See* C.R. at 40 (Def.'s Ex. 1).  Not to be confused, there was a section entitled "termination option," but this "option" (which if accepted was required supported by separate consideration—$5,000) would have allowed the buyer to terminate the contract *after it had been accepted*.  C.R. at 49 (Def.'s Ex. 1 ¶ 22).

Later in the day on March 5, 2014, Mathews responded asking whether the March 7th deadline was concrete or negotiable.  C.R. at 52 (Def.'s Ex. 2).

11

Mathews's email did not offer any money or benefit to induce Crockett to make an extension, nor did his email offer for Cardenas to suffer any detriment. *Id.*

Mathews also attached a "redline" draft which proposed material modifications to Crockett's terms. *Id.* Mathews's proposed modifications included changing: the sufficiency and payment for a survey (C.R. at 54 (Def.'s Ex. 2 ¶ 6.C.)); the closing date (C.R. at 57 (Def.'s Ex. 2 ¶ 9)); the default provision (C.R. at 59 (Def.'s Ex. 2 ¶ 14.A.)); and the termination option (C.R. at 61 (Def.'s Ex. 2 ¶ 22)).

### C. *On March 6, 2014, Crockett extended the deadline to accept to March 12, 2014.*

The next morning, Crockett stated that she was "happy to extend the deadline to Wednesday, March 12th." C.R. at 64 (Def.'s Ex. 3). Crockett's message did not state that the offer would be irrevocable until the extended deadline to accept, nor is there any evidence of any consideration for the extension. *Id.* In so extending the original deadline, Crockett functionally remade her initial offer with a new deadline and did not accept Cardenas's redline.

Mathews responded that he was working with his client, Cardenas, on proposed changes to Crockett's offer. *Id.*

### D. *Cardenas tendered a "Proposed Counter-Offer" on March 10, 2014.*

On March 10th, at Cardenas's direction, Mathews emailed McCullough a "Proposed Counter-Offer." C.R. at 66 (Def.'s Ex. 4). As detailed in Mathews's

email message and the attached redline draft, Mathews reasserted material changes to the original offer, including changes to the closing date, default provision, and termination option. *Id.* Mathews did not indicate that Cardenas was keeping Crockett's initial offer under advisement. *Id.*

McCullough testified by affidavit that Crockett never accepted this counteroffer and that Crockett never remade her initial offer after receiving the counteroffer. C.R. at 38 (McCullough Affid. ¶ 9). McCullough's testimony is uncontroverted.

### E. *Cardenas attempted to "accept" Crockett's earlier offer on March 12, 2014, the extended deadline.*

On March 12th, Mathews emailed McCullough asking whether Crockett would accept or reject Cardenas's proposed changes. C.R. at 87 (Pl.'s Ex. A). McCullough responded that he had forwarded Cardenas's proposal to Crockett and that he would get back to Mathews as soon as possible. *Id.* Mathews forwarded McCullough's response to Cardenas, noting that at least Crockett had not rejected Cardenas's proposal. *Id.*

Having not received a response to his counteroffer by later in the day on March 12, 2014, Cardenas attempted to accept Crockett's offer. C.R. at 78 (Def.'s Ex. 5); *see also* C.R. at 5–6 (pleading that acceptance occurred on March 12th). Mathews sent an email on March 13th detailing Cardenas's attempt to accept the offer the day prior, March 12th. C.R. at 78 (Def.'s Ex. 5). According to Mathews,

Cardenas delivered the signed contract and the earnest money to the title company on March 12th. *Id.*; *see also* C.R. at 5–6 (Cardenas pleading that he signed and accepted the contract on March 12th).

The signed contract and the checks are dated March 7, 2014, but it is undisputed that that these documents were not delivered until March 12th. C.R. at 97 (Pl.'s Ex. B), 102–04 (Pl.'s Ex. C). Cardenas did not contend that he signed the contract on March 7th during the summary judgment proceedings. (It was not until the untimely supplemental motion for new trial (*see infra*) that Cardenas for the first time contended that he signed the contract on March 7, 2014, as part of an estoppel argument he does not make in this Appeal. *See infra* Argument § II.A. His live trial court petition states that he "accepted [the contract] on March 12, 2014 by executing said contract and paying the Earnest Money" (C.R. at 5), and that it was "[o]n March 12, 2014 when Plaintiff signed the contract." C.R. at 6. Because Cardenas had never previously contended that he signed the contract on March 7, 2014, Crockett has not directly addressed this factual allegation and will not do so herein (because it is unnecessary for this appeal), although she does not concede that Cardenas signed the contract on the 7th.)

Cardenas's transmittal letter for the termination option fee (*see supra* § II.B.) had the date of March 13th. C.R. at 103 (Pl.'s Ex. C).

14

## III. The summary judgment proceedings.

### A. *Cardenas's Proposed Counter-Offer terminated his ability to later accept Crockett's offer.*

Crockett filed a traditional motion for summary judgment contending that no enforceable contract existed because the summary judgment evidence proved that Cardenas did not accept Crockett's offer. C.R. at 27–28. Acceptance must be identical to the offer, and because Cardenas's Proposed Counter-Offer made material modifications to Crockett's offer, it constituted a counteroffer that terminated Cardenas's power to accept Crockett's offer. C.R. at 31–34. Thus, Cardenas's attempt to accept Crockett's offer on March 12th was ineffective, and there was no contract between the parties. *Id.*

Anticipating that Cardenas might try to place this case within an exception to the general rule that a counteroffer terminates the power to accept the prior offer, Crockett noted that the counteroffer did not contain any specific language stating that Cardenas was keeping the initial offer under advisement. C.R. at 31–32, 33–34. Crockett also noted that her agreement to extend the deadline to accept to March 12th was not supported by consideration and did not constitute an "option contract." C.R. at 33–34 & n.3.

15

**B.** *Cardenas's only response was that the Proposed Counter-Offer was not a counteroffer.*

Cardenas filed a response to the Motion for Summary Judgment, arguing only that the Proposed Counter-Offer was not actually a counteroffer and that he could, therefore, still accept the offer by the extended March 12 deadline. C.R. at 79, 81–82. He did not urge that the parties had an option contract, nor did he offer any evidence of consideration for the extension. And consistent with his petition, Cardenas did not claim to have signed the contract on March 7th (prior to his Proposed Counter-Offer).

Crockett filed a reply. C.R. at 106.

**C.** *The trial court granted summary judgment.*

The trial court granted summary judgment in favor of Crockett and signed its final judgment on February 25, 2015. C.R. at 114.

**IV. The motion for new trial proceedings.**

**A.** *Cardenas's timely motion for new trial stated no grounds for new trial.*

Cardenas filed a timely motion for new trial on March 27, 2015, thirty days after the signed final judgment. C.R. at 116; *see* TEX. R. CIV. P. 329b(a) (requiring motion for new trial to be filed within thirty days of judgment's signing) (App. Tab C). The motion, however, contained no grounds for reversing the trial court's prior decision except to state, "The summary judgment granted was contrary to

16

established law. There still remains [sic] questions of fact that have not been determined by the finder of fact." C.R. at 116. The motion was overruled by operation of law on May 11, 2015. *See* TEX. R. CIV. P. 329b(c) (App. Tab C).

**B.** ***Cardenas's untimely "supplemental" motion for new trial—filed seventy-five days after judgment—asserted new grounds.***

Cardenas then filed a "supplemental" motion for new trial on May 11, 2015, seventy-five days after the judgment was signed and the same day that the original motion for new trial was overruled by operation of law. C.R. at 119; *see* TEX. R. CIV. P. 329b(c) (App. Tab C). Because this supplemental motion was filed more than thirty days after the judgment was signed, the motion was untimely. TEX. R. CIV. P. 329b(a) (App. Tab C).

Cardenas claimed in his Supplemental Motion that he signed Crockett's offer on March 7th, as part of an estoppel argument he does not raise on appeal. C.R. at 121. Importantly, Cardenas still conceded that he did not communicate his acceptance until March 12th, and he did not contend that his signature, in itself, constituted acceptance. *See id.* Additionally Cardenas claimed, for the first time, that an option contract existed between the parties that allowed Cardenas to accept Crockett's offer after the counteroffer and that Crockett failed to negate this option contract's existence. C.R. at 119–21.

17

Crockett responded that the supplemental motion for new trial was untimely. C.R. at 140. The trial court considered and denied the supplemental motion by a written order.

## V. The appeal.

On appeal, in contradiction with his own petition, Cardenas asserts for the first time that a fact issue exists as to whether an enforceable contract was created on March 7th, prior to his own counteroffer. Appellant's Br. 5–6. Alternatively, Cardenas alleges that Crockett failed to conclusively negate the existence of an option contract that would have allowed Cardenas to accept Crockett's offer even after the counteroffer. Appellant's Br. 6–8. Cardenas did not mention his supplemental motion for new trial or the trial court's denial of that motion in either his notice of appeal or his brief in this Court. C.R. at 168.

## Summary of the Argument

The law is clear that a counteroffer terminates an offeree's power of acceptance unless an exception applies. Cardenas's brief in this Court asserts only one possible exception to this rule: he contends that Crockett failed to conclusively negate the existence of an option contract whereby Crockett allegedly promised to hold her offer open until March 12th. This argument is not properly before this Court because Cardenas failed to raise it in the summary judgment proceedings. Additionally, Crockett had no burden to negate this theory because Cardenas did not plead the existence of an option contract. That said, the summary judgment evidence conclusively negates the option contract theory. The written negotiations establish that the parties never agreed to make Crockett's offer irrevocable for any period of time and that there was no consideration in support of the extension. Thus, to the extent the Court reaches this contention, the Court should reject this argument. *See* Argument § I.

Additionally, as a last-ditch effort to avoid judgment, Cardenas argues for the first time on appeal that he actually signed Crockett's offer on March 7th and thereby created an enforceable contract before he even tendered his own counteroffer. Setting aside the head-scratching nature of this argument (for why would he propose a "Counter-Offer" to an agreement he had already accepted and then scramble to communicate his acceptance after he did not get a response on his

counteroffer), this theory is not properly before this Court because Cardenas failed to raise it in the summary judgment proceedings. Moreover, this argument contradicts Cardenas's own petition. Nonetheless, the summary judgment evidence conclusively negates this theory as well, because it is undisputed that Cardenas did not communicate his purported signing of the contract to Crockett until after he tendered the counteroffer and there was, therefore, no legal acceptance on the date he claims to have signed the contract. Thus, to the extent the Court reaches it, the Court should reject this argument. *See* Argument § II.

Cardenas's brief in this Court is short but incomplete. He neglects to mention to the Court that he did not raise either of his appellate arguments in the summary judgment proceedings. In fact, his brief fails to mention the new trial proceedings—including his untimely supplemental motion for new trial—at all. The Court should not permit him to raise these issues on appeal as grounds for reversal.

Cardenas's Proposed Counter-Offer constituted a rejection of Crockett's offer and terminated Cardenas's ability to later accept Crockett's offer. As such, his later attempt to accept was ineffective and no enforceable contract was formed. This Court should affirm the trial court's summary judgment in favor of Crockett.

## Standard of Review

An appellate court reviews a grant of summary judgment *de novo*. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam). Crockett, as the movant for traditional summary judgment, has the burden to show that no genuine issue of material fact exists and that judgment should be granted as a matter of law. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (citing TEX. R. CIV. P. 166a(c) (App. Tab B)). Under this standard, a defendant is entitled to summary judgment when she conclusively negates at least one essential element of the plaintiff's cause of action or conclusively proves her defense as a matter of law. *Cortina v. P.I. Corp.*, 385 S.W.3d 613, 616 (Tex. App.—Corpus Christi 2012, no pet.). When a movant meets her burden, the burden then shifts to the non-movant to disprove or raise an issue of fact as to the negated element. *See Amedisys, Inc.*, 437 S.W.3d at 511. A matter is conclusively negated or established when reasonable people could not differ as to the conclusion to be drawn from the evidence. *Cortina*, 385 S.W.3d at 616 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)).

## Argument

**I.    Cardenas's counteroffer terminated his ability to accept Crockett's prior offer. {Response to Appellant's Argument § I.B.}**

To prevail in breach of contract, Cardenas must prove that an enforceable contract exists, and acceptance is essential to an enforceable contract. *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (5) consideration. *Id.* Where negotiations are in writing, the question of whether an offer was unconditionally accepted is primarily a question of law for the court. *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 765 (Tex. App.—Corpus Christi 2004, no pet.).

The summary judgment evidence conclusively establishes that Cardenas did not—and could not have—accepted Crockett's offer. C.R. at 27. Cardenas's only attempt to communicate his acceptance of the contract occurred on March 12th, two days after he tendered his counteroffer. By this time, however, Cardenas's counteroffer on March 10th had terminated his ability to accept Crockett's offer. Thus, as a matter of law, Cardenas's attempt to "accept" the offer on March 12th was ineffective and no contract was formed. Because the summary judgment

22

evidence conclusively negated the acceptance element, the trial court properly granted summary judgment in favor of Crockett, and this Court should affirm the trial court's judgment.

## A. *Cardenas's counteroffer terminated his power of acceptance, and no exception permitted him to later accept Crockett's offer.*

Both parties agree that a counteroffer constitutes a rejection of the prior offer and terminates the offeree's ability to accept the prior offer unless an exception applies. *See* Appellant's Br. 2. Under this general rule, the offeree cannot tender a counteroffer and then later accept the offeror's prior offer. *Thurmond v. Wieser*, 699 S.W.2d 680, 682 (Tex. App.—Waco 1985, no writ). This rule is rooted in common business expectations that one proposal is dropped when another is taken under consideration. RESTATEMENT (SECOND) OF CONTRACTS § 39 cmt. a (Am. Law Inst. 1981) (App. Tab A).

In the trial court, Cardenas argued that his Proposed Counter-Offer was not actually a counteroffer. C.R. at 81–82. The trial court rejected that position, and Cardenas does not raise it here. C.R. at 114. Cardenas's Proposed Counter-Offer was a clear "counteroffer" within the meaning of this rule because it sought to modify material terms in Crockett's offer. *See* C.R. at 31–34 (discussing material changes proposed by Cardenas), 106–11; *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 765 (Tex. App.—Corpus Christi 2004, no pet.) ("Any material change

23

in a proposed contract constitutes a counteroffer . . . ."). Therefore, Cardenas's counteroffer terminated his right to accept the offer unless an exception applies.

Two exceptions exist to the general rule that a counteroffer terminates the offeree's power of acceptance, only one of which Cardenas raises (albeit late) in this case: an enforceable option contract that renders an offer irrevocable for a period of time, even if an intervening counteroffer is made. Appellant's Br. 6–8. (The other exception, not at issue in this case, occurs when the offeree's counteroffer uses or is accompanied by specific language expressing the intent to keep the initial offer under advisement. *See Thurmond v. Wieser*, 699 S.W.2d 680, 682 (Tex. App.—Waco 1985, no writ) (citing RESTATEMENT (SECOND) OF CONTRACTS § 39(2) (App. Tab A)). Neither party contends this exception is applicable.)

An option contract is an agreement by the parties to make an offer irrevocable for a set period of time. *See Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 853 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ("An option contract has two components: (1) the underlying contract which is not binding until accepted; and (2) the covenant to hold open to the optionee the opportunity to accept."); RESTATEMENT (SECOND) OF CONTRACTS § 39 cmt. a, illus. 1 (App. Tab A) (noting exception for option contracts). To be enforceable, an option contract must be supported by independent consideration. *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d

24

101, 105 (Tex. 2004). If the option contract is not supported by consideration, the offer is revocable. *Hott*, 663 S.W.2d at 853–54; *Echols v. Bloom*, 485 S.W.2d 798, 800 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (holding that even if an offer is called "irrevocable," it can be revoked if promise not supported by consideration); *Womack v. Dalton Adding Mach. Sales Co.*, 285 S.W. 680, 681 (Tex. Civ. App. 1926, no writ) (explaining that an offer without consideration can be revoked at any time prior to acceptance "even though the offeror has expressly declared in the offer that he will not revoke it, or has by the very terms of the offer allowed the offeree a certain time to accept").

In the summary judgment proceedings, it was undisputed that there was no option contract. In fact, the only mention of the option contract was by footnote in the motion for summary judgment itself simply to point out that the exception had no application to this case. C.R. at 33 n.3. Contrary to the summary judgment proceedings, however, Cardenas now contends that an option contract existed thus enabling him to accept the offer despite his having made a counteroffer. Appellant's Br. 6–8. Cardenas raised this argument for the first time in his untimely supplemental motion for new trial, and accordingly, the argument is waived. C.R. at 119; *see infra* § I.B.

Even if not waived, however, Cardenas's new option contract theory fails because the summary judgment evidence conclusively establishes that there was

never an agreement to make Crockett's offer irrevocable until the extended deadline to accept, and even if there had been such an agreement, there was no consideration making such an agreement enforceable. *See infra* §§ I.C.–I.D.

**B.** ***Cardenas waived his option contract theory.***

Cardenas failed to assert that an option contract existed in response to Crockett's motion for summary judgment. C.R. at 79. As such, Cardenas has waived this argument. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c) (App. Tab B). In this rule, "motion, answer or other response" refers to summary judgment motions, responses, and replies, and not to pleadings generally. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A non-movant does not need to file a summary judgment response to complain that grounds presented to the trial court are insufficient for summary judgment as a matter of law, *but* the non-movant may not raise any other issues as grounds for reversal on appeal without first presenting them in a summary judgment response. *Id.* Pursuant to Rule 166a(c), "the non-movant may not urge on appeal as reason for reversal of the summary judgment any and every *new* ground that he can think of." *Id.* Rule 166a(c) prevents non-movants from "laying behind the log." *Id.* at 677. Accordingly, Cardenas had the burden to file a written response that would "fairly apprise" Crockett and the trial

26

court of the issues Cardenas believed should defeat Crockett's motion. *See id.* at 678.

Additionally, Crockett had no burden to negate allegations that are not raised in Cardenas's petition. "A defendant need not, however, show that the plaintiff cannot succeed on any theory *conceivable* in order to obtain summary judgment; he is only required to meet the plaintiff's case as pleaded." *Smithkline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995). The idea of an option contract is not even raised by Cardenas's pleadings.

Because Cardenas failed to raise his argument of an option contract in the summary judgment proceedings and because this theory is not even raised by Cardenas's own pleadings, Cardenas has waived the theory. *See Pena v. Je Matadi Dress Co.*, No. 01-06-00632-CV, 2008 Tex. App. LEXIS 678, at *6–12, 2008 WL 256972 (Tex. App.—Houston [1st Dist.] Jan. 31, 2008, no pet.) (mem. op.) (barring non-movant from changing factual theories on appeal).

Additionally, Cardenas's attempt to include this argument in his untimely supplemental motion for new trial is ineffective to preserve this theory as a ground for reversal on appeal. *See Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003). Even if the supplemental motion had been timely and had argued the existence of an option contract that allowed Cardenas to accept the offer notwithstanding his counteroffer, a timely motion for new trial does not preserve theories to reverse a

27

summary judgment. *See, e.g.*, *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991) (holding that non-movant waived argument that summary judgment ground was not pleaded when non-movant raised it for the first time in motion for new trial). An untimely supplemental motion for new trial preserves nothing at all for appeal if denied. *Moritz*, 121 S.W.3d at 720 (explaining that a court's denial of an untimely supplemental or amended motion makes the motion "ineffectual for any purpose" and "a nullity for purposes of preserving issues for appellate review"). Because Cardenas did not raise this theory in response to the motion for summary judgment and because Cardenas's theory is not supported by his pleadings, Cardenas cannot raise it here on appeal. The Court should hold that he has waived this theory. *See Pena v. Je Matadi Dress Co.*, No. 01-06-00632-CV, 2008 Tex. App. LEXIS 678, at *6–12, 2008 WL 256972 (Tex. App.—Houston [1st Dist.] Jan. 31, 2008, no pet.) (mem. op.).

## C. *The parties did not agree to make Crockett's offer irrevocable.*

Even if Cardenas had not waived his option contract theory, the Court should reject his argument because the summary judgment evidence conclusively establishes that the parties never agreed to make Crockett's offer irrevocable for the duration of the extension period. *See Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 853 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (requiring an option contract to have a "covenant to hold open to the optionee the opportunity to

28

accept"). McCullough's uncontroverted affidavit testimony establishes the negotiations were entirely in writing. C.R. at 38 (McCullough's Affid. ¶ 4). Crockett attached the written negotiations surrounding the extension as summary judgment evidence. C.R. at 40–78 (Def.'s Exs. 1–5). The negotiations surrounding the extension consisted of:

- Crockett's written offer stating an acceptance deadline of March 7th (C.R. at 50 (Def.'s Ex. 1 ¶ 24));
- An email from Cardenas's lawyer on March 5th asking whether this deadline was "negotiable" (C.R. at 52 (Def.'s Ex. 2)); and
- A response from Crockett stating that she was "happy to extend the deadline to Wednesday, March 12th." (C.R. at 64 (Def.'s Ex. 3)).

No reasonable person could conclude from this evidence that the parties agreed to make Crockett's offer irrevocable. To the contrary, the summary judgment evidence establishes that Crockett merely extended the deadline with no discussion or agreement as to whether that offer would be irrevocable during the extension period. Thus, summary judgment conclusively establishes that the parties did not enter into an option contract. *See Cortina v. P.I. Corp.*, 385 S.W.3d 613, 616 (Tex. App.—Corpus Christi 2012, no pet.) (stating that something is conclusively established when reasonable people could not come to different conclusions from the evidence).

Cardenas's failure to identify any evidence in the record suggesting an inference of an option contract only solidifies the conclusion that no option contract exists. In his brief in this Court, Cardenas baldly states that "[t]his case

29

involves an option contract," yet Cardenas makes no attempt to identify any evidence giving rise to the inference that Crockett agreed to make her offer of sale irrevocable for the duration of the extension period. Appellant's Br. 4. He does not because he cannot. Cardenas is asking the Court to assume that an option contract exists, but this Court cannot do so in light of the fact that the negotiations are in the record and do not contain any indication of an agreement to make the offer irrevocable for the duration of the extension period. Thus, the Court should reject Cardenas's argument concerning an alleged option contract.

### D.   *The alleged option lacked consideration.*

As an additional and alternative basis for rejecting Cardenas's option contract argument, the summary judgment evidence conclusively establishes that there was no consideration for the alleged option agreement. As stated previously, an option contract is not enforceable unless it is supported by independent consideration. *See Echols v. Bloom*, 485 S.W.2d 798, 800 (Tex. Civ. App.— Houston [14th Dist.] 1972, writ ref'd n.r.e.); *see supra* Argument § I.A.

Consideration is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). It consists of either a benefit to the promisor or a loss or detriment to the promisee. *N. Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998). A promisor "benefits" when the promisor acquires a legal right to which the promisor would not

30

otherwise be entitled in exchange for a promise. *Bryant v. Cady*, 445 S.W.3d 815, 820 (Tex. App.—Texarkana 2014, no pet.) (citing *N. Nat. Gas Co.*, 986 S.W.2d at 607). A promisee suffers a legal "detriment" when, in return for a promise, the promisee surrenders a legal right that the promisee otherwise would have been entitled to exercise. *Id.* For a "detriment" to act as consideration, it must induce the making of the promise, and the promise must induce the detriment. *Roark*, 813 S.W.2d at 496.

In the present case, the negotiations concerning the extension conclusively establish that the parties did not agree to or exchange any consideration. On March 5th, Mathews asked whether the original offer deadline of March 7th was negotiable. C.R. at 52 (Def.'s Ex. 2). In that email, Mathews did not offer for his client to suffer a detriment nor did he offer to benefit Crockett. *Id.* Crockett replied the next morning saying that she was happy to extend the deadline. C.R. at 64 (Def.'s Ex. 3). That was the entire negotiation. No reasonable person could conclude from these emails that Crockett had agreed to receive a benefit in exchange for this extension or that Cardenas had agreed to suffer a detriment that induced Crockett to promise the extension. To the contrary, the negotiations establish that Crockett decided to grant the extension without receiving any benefit in return and that Cardenas received the extension without offering a benefit or to suffer a detriment. Thus, the summary judgment evidence conclusively establishes

that no consideration supported the alleged agreement to make the offer irrevocable during the extension period. *See Cortina v. P.I. Corp.*, 385 S.W.3d 613, 616 (Tex. App.—Corpus Christi 2012, no pet.) (stating that something is conclusively established when reasonable people could not come to different conclusions from the evidence).

The only consideration mentioned at all during the contract negotiations was the earnest money for the sales contract and the option fee for the option to terminate, neither of which support the alleged option contract because it is not independent of the contract. *See 1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 105 (Tex. 2004). Moreover, even if that money could support the alleged option contract, the offer would have been revocable until Cardenas delivered the consideration, which did not occur until after Cardenas's counteroffer. *See Echols v. Bloom*, 485 S.W.2d 798, 800–01 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (holding offer to be properly revoked prior to receiving consideration).

Cardenas does not identify any consideration supporting the alleged agreement to make Crockett's offer irrevocable. Instead, citing the Supreme Court's opinion in *Roark*, Cardenas claims that Crockett failed to conclusively prove a negative—that there was no consideration. Appellant's Br. 7–8 (citing

*Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492 (Tex. 1991)). *Roark*, however, is distinct from the present case on this issue.

In *Roark*, unlike the present case, the movants attempted to use deemed admissions regarding consideration to prove there was no consideration, but the movants otherwise provided no details of the negotiations of the contract in question. *See* 813 S.W.2d at 494. The Supreme Court ultimately held there were fact issues because the deemed admissions did not address all forms of consideration. *Id.* at 495–96.

The present case is distinct from *Roark* because the summary judgment evidence in this case actually shows the negotiations between the parties, from which it can be seen that consideration was never even discussed. McCullough's affidavit testimony that the parties conducted all of their negotiations in writing is uncontroverted. C.R. at 38 (McCullough Affid. ¶ 4). Crockett presented the exchange between the parties concerning the extension. C.R. at 52 (Def.'s Ex. 2), 64 (Def.'s Ex. 3). Unlike in *Roark*, the record here is clear as to what the parties negotiated when Crockett decided to extend the deadline. Those negotiations reveal that neither party discussed consideration in exchange for Crockett extending the offer or for Crockett's alleged (and unsubstantiated) agreement to make her offer irrevocable. Contrary to Cardenas's suggestion, *Roark* does not require Crockett to provide additional, specific testimony stating—in essence—

"there is nothing else." *See* Appellant's Br. 6–8. Rather, *Roark* only requires sufficient evidence establishing the circumstances that gave rise to Crockett's decision to extend the deadline. *See Roark*, 813 S.W.2d at 496 (holding that deemed admissions did "not establish, as a matter of law, the *circumstances that gave rise to the letter agreement*" (emphasis added)).

The parties never reached an agreement to make the offer irrevocable during the extension period. Even if they did however, the negotiations conclusively establish that no consideration supported such an agreement. Thus, this Court should reject Cardenas's argument and should affirm the trial court's summary judgment in favor of Crockett.

## II. Cardenas's new argument that he accepted the contract prior to tendering a counteroffer fails. {Response to Appellant's Argument § I.A.}

During the summary judgment proceedings, it was undisputed that Cardenas's only attempt at accepting Crockett's offer was on March 12th, after he made his Proposed Counter-Offer on March 10th. *See* C.R. at 81–82 (arguing only that Proposed Counter-Offer was not an actual counteroffer). Seventy-five days after final judgment, Cardenas asserted for the first time that he had actually already signed the contract on March 7th. C.R. at 114 (final judgment on February 25, 2015), 119 (supplemental motion for new trial on May 11, 2015), 121 (asserting signature on March 7th). In this Court, Cardenas claims for the first

34

time that this alleged March 7th signature constituted acceptance and created an enforceable contract on that date (before he tendered a counteroffer and then scrambled to deliver his acceptance of Crockett's earlier offer). Appellant's Br. 6. Cardenas relies solely on the signed contract and checks bearing the date of March 7th, though it is undisputed Cardenas made no attempt to deliver the contract until at least March 12th. Appellant's Br. 1, 6; C.R. at 81, 121.

A. ***Cardenas waived his theory that he accepted and created an enforceable contract on March 7th.***

Pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure, Cardenas has waived this theory. *See supra* Argument § I.B.

Cardenas never alleged a March 7th acceptance in the trial court. *See* C.R. at 79–83. Cardenas argued only that his counteroffer did not terminate his ability to later accept Crockett's offer because his "Proposed Counter-Offer" was not a counteroffer at all. *See* C.R. at 81–82. The trial court rejected this theory, and Cardenas does not raise it in this Court. C.R. at 114.

The first time Cardenas pointed to the March 7th date on the contract and checks was in his untimely supplemental motion for new trial. C.R. at 121. Even in that motion, however, he only cited the date on those documents as part of an estoppel argument not made in this Court, and he did not argue that the signature itself was an acceptance. C.R. at 121. But even if the supplemental motion had been timely and had argued the contract had been accepted on March 7th, a timely

35

motion for new trial does not preserve theories to reverse a summary judgment. *See, e.g.*, *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991).

In addition to not raising this position in the summary judgment proceedings, Cardenas's own petition contradicts his current theory. Cardenas specifically alleges in his petition that he accepted Crockett's offer on March 12th. C.R. at 5 ("Plaintiff accepted on March 12, 2014 . . . ."). Moreover, Cardenas specifically pleaded that he "signed the contract" on March 12th. C.R. at 6 ("*On March 12, 2014 when Plaintiff signed the contract* that Defendant had tendered to him and paid the Earnest Money a valid and enforceable contract was formed." (emphasis added)). Crockett had no burden to negate allegations that are contrary to Cardenas's own petition. "A defendant need not, however, show that the plaintiff cannot succeed on any theory *conceivable* in order to obtain summary judgment; he is only required to meet the plaintiff's case as pleaded." *Smithkline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995).

Because Cardenas failed to raise this theory in the summary judgment proceedings and because this theory is contrary to Cardenas's own pleadings, Cardenas has waived the theory. *See Pena v. Je Matadi Dress Co.*, No. 01-06-00632-CV, 2008 Tex. App. LEXIS 678, at *6–12, 2008 WL 256972 (Tex. App.—

36

Houston [1st Dist.] Jan. 31, 2008, no pet.) (mem. op.) (barring non-movant from changing factual theories on appeal).

### B. *No contract was formed prior to the Proposed Counter-Offer.*

Even if Cardenas had not waived his claim that he accepted the contract on March 7th, the summary judgment evidence conclusively establishes that no contract was formed prior to the Proposed Counter-Offer. No witness testified that Cardenas signed the contract on March 7th. Instead, Cardenas relies solely on the fact that the signed contract and checks, which were undisputedly tendered on or after March 12th, bear the date of March 7th. C.R. at 5–6 (pleading March 12th delivery), 97–102 (Pl.'s Ex. B) (signed contract and checks); Appellant's Br. 7. Even if that raises a fact issue as to whether Cardenas actually signed the contract on March 7th, which is not conceded, the summary judgment evidence conclusively establishes that Cardenas did not communicate his signature to Crockett until March 12th, which was two days after he tendered his counteroffer.

As Crockett noted in her summary judgment motion, to prove the existence of an enforceable contract, a party must show that an offeree accepted the offer *and* communicated that acceptance to the offeror. C.R. at 30; *Am. Nat'l Ins. Co. v. Warnock*, 114 S.W.2d 1161, 1164 (Tex. 1938). An acceptance is not binding until delivered to and actually received by the offeror. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.);

37

*Dempsey v. King*, 662 S.W.2d 725, 727 (Tex. App.—Austin 1983, writ dism'd w.o.j.). With exceptions that do not apply to this case, an acceptance that resides solely within the exclusive knowledge of the acceptor without being communicated is not binding acceptance. *Cruse*, 165 S.W.3d at 26; *Dempsey*, 662 S.W.2d at 726–27 (acceptance not operative until actually received). In fact, it is "so well established as to be beyond dispute" that an acceptance is not binding until delivered to the offeror. *Jatoi v. Park Ctr., Inc.*, 616 S.W.2d 399, 400 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.). "[A] mere private uncommunicated assent will not effect a contract." *Id.*

In the present case, even if Cardenas signed the contract on March 7th, the well-established principles illustrated in *Dempsey* and *Jatoi* mandate the conclusion that Cardenas did not form a contract by signing it on March 7th before tendering his counteroffer. The summary judgment evidence conclusively establishes that Cardenas did not communicate his acceptance to Crockett until March 12th, two days after tendering his counteroffer. This is undisputed. Cardenas admits this in his original petition, his summary judgment response, his supplemental motion for new trial, and in his brief in this Court. C.R. at 5–6 (stating in petition that he signed and accepted the contract on March 12th), 81 (stating in summary judgment response that he sent signed contract and checks on March 12th and 13th), 121 (stating in supplemental motion for new trial that he did

38

not deliver signed contract and checks until March 12th); *see* Appellant's Br. 1 (stating that checks not delivered until March 12th and 13th). Indeed, rather than communicating his alleged acceptance, Cardenas instructed his attorney to send the Proposed Counter-Offer to Crockett. C.R. at 66 (Def.'s Ex. 4). Then Cardenas waited two days before attempting to deliver the signed contract. C.R. at 78 (Def.'s Ex. 5).

No reasonable person could conclude from this evidence that Cardenas communicated the alleged acceptance before Cardenas sent the Proposed Counter-Offer.

To support his argument, Cardenas cites the *Joiner* opinion from this Court. Appellant's Br. 6 (citing *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no writ)). *Joiner* is inapplicable to this case. In *Joiner,* the parties orally agreed to a contract, and the offeror expressly waived delivery of the signed contract by the deadline to accept. *Id.* at 608. Later, after the oral agreement and before the signed contract was delivered, the offeree attempted to withdraw acceptance. *Id.* The offeree argued that his acceptance was ineffective because it was withdrawn prior to delivery of the written contract and, therefore, there was no contract. *Id.* at 608–10. The Court held that delivery was not required because it had been waived. *Id.* There is no such evidence here.

In the present case, the summary judgment evidence conclusively establishes that the parties did not have an oral agreement to sell the property nor any agreement to waive the communication element. McCullough's affidavit testimony is uncontroverted that the parties negotiated the potential sale in writing. C.R. at 38 (McCullough Affid. ¶ 4). The negotiations are in the summary judgment evidence, and none of the negotiations reflect an intention to waive communication of acceptance, nor does Crockett's offer contain a waiver of this essential element. *Joiner* is thus inapplicable to this case, and Cardenas was required to communicate his acceptance to create an enforceable contract. As *Jatoi* explained, "[A] mere proposal to sell does not become a sale until accepted *and* notice of acceptance given the proposer." 616 S.W.2d 399, 400 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.) (emphasis added). In fact, Cardenas's own conduct demonstrates that he understood he must communicate acceptance. Mathews's email documents the lengths to which Cardenas went to attempt to communicate his acceptance on March 12th. C.R. at 78 (Def.'s Ex. 5).

As discussed above, Cardenas's argument is waived, and the Court should not reach it. *See supra* Argument § II.A. Additionally, this argument cannot be grounds for reversal because it contradicts Cardenas's own pleadings. *See id.* To the extent the Court reaches this theory, the Court should reject Cardenas's argument and hold that the summary judgment evidence conclusively establishes

that the parties did not form an enforceable sales contract before Cardenas tendered his counteroffer.

## III.	The Court should affirm the trial court's summary judgment.

As demonstrated above, the summary judgment evidence conclusively establishes that Cardenas did not accept Crockett's offer. It is well established that a counteroffer terminates an offeree's power of acceptance, and this case provides no exception to that rule. Thus, no contract exists, and the trial court's summary judgment in favor of Crockett should be affirmed.

The Court should not permit Cardenas's attempt to contradict his own pleadings and to argue beyond his position in the summary judgment proceedings. He did not plead the existence of an enforceable option contract to hold the offer of sale open for the duration of the extension period, but even if he had, such a pleading would fail in the face of the summary judgment evidence. Additionally, Cardenas's theory that a contract was formed prior to his counteroffer not only contradicts his own petition but also fails in light of the evidence before the Court.

The summary judgment evidence—the written negotiations between the parties—conclusively negates both of Cardenas's theories. No contract was formed prior to the counteroffer, and no option contract exists between the parties. To the extent the Court reaches these arguments, the Court should reject them and uphold the trial court's summary judgment in favor of Crockett.

41

## Prayer

For the foregoing reasons, Nancy Crockett requests that this Court affirm the

trial court's judgment.

Respectfully submitted,

/s/ J. Joseph Vale

**J. Joseph Vale**
State Bar No. 24084003
jvale@atlashall.com
**Dan K. Worthington**
State Bar No. 00785282
dkw@atlashall.com
**Sarah A. Nicolas**
State Bar No. 24013543
snicolas@atlashall.com
**ATLAS, HALL & RODRIGUEZ, LLP**
818 Pecan/P.O. Box 3725
McAllen, Texas 78501
(956) 682-5501 (phone)
(956) 686-6109 (facsimile)

**Jason R. Mann**
State Bar No. 24004793
jmann@thelawmann.com
1309 N. Stuart Place Road,
Suite A
Harlingen, Texas 78552
(956) 428-4114 (phone)
(956) 428-9494 (facsimile)

Attorneys for Nancy Crockett

## Certificate of Rule 9.4(i) Compliance

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this Brief of Appellee, excluding those matters listed in Rule 9.4(i)(1), is 7,644 words per the word processing program used for its preparation (Microsoft Word).

/s/ J. Joseph Vale
J. Joseph Vale

## Certificate of Service

I certify that the foregoing document was electronically filed with the Clerk of the Court using the electronic case filing system of the Court. I also certify that a true and correct copy of the foregoing was served on the following counsel of record on September 16, 2015 as follows:

| Attorney: | For: | Served by: |
|---|---|---|
| Joe Hernandez (jhernandez@guerraleeds.com) **GUERRA, LEEDS, SABO & HERNANDEZ, P.L.L.C.** 1534 E. 6th Street, Suite 200 Brownsville, Texas 78520 Facsimile: (956) 541-1893 *and* Richard E. Zayas (lawfirm3100@yahoo.com) **ZAYAS & HERNANDEZ** 950 E. Van Buren St. Brownsville, Texas 78520 Facsimile: (956) 546-5067 | Appellant, R.E. Cardenas | Electronically if available, or by facsimile |

/s/ J. Joseph Vale
J. Joseph Vale

44

**Appendices**

| Tab | Document |
| --- | --- |
| A | RESTATEMENT (SECOND) OF CONTRACTS § 39 |
| B | TEX. R. CIV. P. 166a |
| C | TEX. R. CIV. P. 329b |



TAB A

OF THE APPENDIX

## § 39 Counter-Offers

**(1) A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.**

**(2) An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree.**

### COMMENTS & ILLUSTRATIONS

**Comment:**

*a. Counter-offer as rejection.* It is often said that a counter-offer is a rejection, and it does have the same effect in terminating the offeree's power of acceptance. But in other respects a counter-offer differs from a rejection. A counter-offer must be capable of being accepted; it carries negotiations on rather than breaking them off. The termination of the power of acceptance by a counter-offer merely carries out the usual understanding of bargainers that one proposal is dropped when another is taken under consideration; if alternative proposals are to be under consideration at the same time, warning is expected.

**Illustration:**

1. A offers B to sell him a parcel of land for $ 5,000, stating that the offer will remain open for thirty days. B replies, "I will pay $ 4,800 for the parcel," and on A's declining that, B writes, within the thirty day period, "I accept your offer to sell for $ 5,000." There is no contract unless A's offer was itself a contract (see § 37), or unless A's reply to the counter-offer manifested an intention to renew his original offer.

*b. Qualified acceptance, inquiry or separate offer.* A common type of counter-offer is the qualified or conditional acceptance, which purports to accept the original offer but makes acceptance expressly conditional on assent to additional or different terms. See § 59. Such a counter-offer must be distinguished from an unqualified acceptance which is accompanied by a proposal for modification of the agreement or for a separate agreement. A mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer. Such responses to an offer may be too tentative or indefinite to be offers of any kind;

or they may deal with new matters rather than a substitution for the original offer; or their language may manifest an intention to keep the original offer under consideration.

**Illustration:**

2. A makes the same offer to B as that stated in Illustration 1, and B replies, "Won't you take less?" A answers, "No." An acceptance thereafter by B within the thirty-day period is effective. B's inquiry was not a counter-offer, and A's original offer stands.

*c. Contrary statement of offeror or offeree.* An offeror may state in his offer that it shall continue for a stated time in any event and that in the meanwhile he will be glad to receive counter-offers. Likewise an offeree may state that he is holding the offer under advisement, but that if the offeror desires to close a bargain at once the offeree makes a specific counter-offer. Such an answer will not extend the time that the original offer remains open, but will not cut that time short. Compare § 38.

**Illustration:**

3. A makes the same offer to B as that stated in Illustration 1. B replies, "I am keeping your offer under advisement, but if you wish to close the matter at once I will give you $ 4,800." A does not reply, and within the thirty-day period B accepts the original offer. B's acceptance is effective.

#### REPORTER'S NOTES

This Section is based on former § 38. See 1 Williston, Contracts § 51 (3d ed. 1957); 1 Corbin, Contracts §§ 89-93 (1963 & Supp. 1980).

*Comment a.* On Uniform Commercial Code § 2-207, and its relation to the "mirror image rule" stated in this Section, see Uniroyal, Inc. v. Chambers Gasket & Mfg. Co., Ind. App. , 380 N.E.2d 571 (1978), and authorities cited therein; Roto-Lith, Ltd. v. F. P. Bartlett & Co., 297 F.2d 497 (1st Cir. 1962); Duval v. Malcom, 233 Ga. 784, 214 S.E.2d 356 (1975); Comment, 32 Ark. L. Rev. 528 (1978). Illustration 1 is based on Illustration 1 to former § 38; see Duval & Co. v. Malcom, supra.

*Comment b.* For an example of an unqualified acceptance with a proposal for modification, see Katz v. Pratt St. Realty Co., 257 Md. 103, 262 A.2d 540 (1970). Illustration 2 is based on Illustration 2 to former § 38; see Coffman Indus., Inc. v. Gorman-Taber Co., 521 S.W.2d 763, 772-73 (Mo. Ct. App. 1975).

*Comment c.* Illustration 3 is based on Illustration 3 to former § 38.

#### Cross Reference

Digest System Key Numbers:
Contracts 24

Restatement of the Law, Second, Contracts

Copyright (c) 1981, The American Law Institute

TAB B

OF THE APPENDIX

Texas Court Rules  > STATE RULES  > TEXAS RULES OF CIVIL PROCEDURE  > PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  > SECTION 8. Pre-Trial Procedure

## Rule 166a Summary Judgment

(a)  *For Claimant.*  --A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

(b)  *For Defending Party.*  --A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c)  *Motion and Proceedings Thereon.*  --The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

**(d)** *Appendices, References and Other Use of Discovery Not Otherwise on File.* --Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

**(e)** *Case Not Fully Adjudicated on Motion.* --If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel, ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

**(f)** *Form of Affidavits; Further Testimony.* --Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

**(g)** *When Affidavits Are Unavailable.* --Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(h)** *Affidavits Made in Bad Faith.* --Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

**(i)** *No-Evidence Motion.* --After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

Texas Rules

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

TAB C

OF THE APPENDIX

# Tex. R. Civ. P. 329b

This document is current through June 26, 2015

**Texas Court Rules** > STATE RULES > TEXAS RULES OF CIVIL PROCEDURE > PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS > SECTION 11. Trial of Causes > J. NEW TRIALS

## Rule 329b Time for Filing Motions

The following rules shall be applicable to motions for new trial and motions to modify, correct, or reform judgments (other than motions to correct the record under Rule 316) in all district and county courts:

   **(a)** A motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed.

   **(b)** One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is signed.

   **(c)** In the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period.

   **(d)** The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.

   **(e)** If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

   **(f)** On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law; provided that the court may at any time correct a clerical error in the record of a judgment and render judgment nunc pro tunc under Rule 316, and may also sign an order declaring a previous judgment or order to be void because signed after the court's plenary power had expired.

   **(g)** A motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rule 316), if filed, shall be

filed and determined within the time prescribed by this rule for a motion for new trial and shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial. Each such motion shall be in writing and signed by the party or his attorney and shall specify the respects in which the judgment should be modified, corrected, or reformed. The overruling of such a motion shall not preclude the filing of a motion for new trial, nor shall the overruling of a motion for new trial preclude the filing of a motion to modify, correct, or reform.

**(h)** If a judgment is modified, corrected or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed, but if a correction is made pursuant to Rule 316 after expiration of the period of plenary power provided by this rule, no complaint shall be heard on appeal that could have been presented in an appeal from the original judgment.

Texas Rules

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.