**A. F. JATOI, M. D., Appellant,**

v.

**PARK CENTER, INC., d/b/a Doctors Community Hospital, et al., Appellees.**

**No. 18408.**

Court of Civil Appeals of Texas, Fort Worth.

April 30, 1981.

Rehearing Denied May 28, 1981.

**400**

Strasburger & Price, and Jeffrey S. Osgood, Dallas, for appellant.

Bailey, Williams, Westfall, Lee & Fowler, and James V. Roberts, Dallas, for appellees.

## OPINION

SPURLOCK, Justice.

This is a suit by A. F. Jatoi, M.D. for breach of contract. Dr. Jatoi claims that the appellee, Park Center, Inc., agreed to sell her 7000 shares of its stock for one dollar per share. Park Center contends that it never communicated to Dr. Jatoi its acceptance of her offer and as a result no contract was ever formed.

Both parties filed motions for summary judgment. The trial court denied Dr. Jatoi's and granted Park Center's. Dr. Jatoi appeals.

We affirm the judgment and overrule each of Dr. Jatoi's points of error.

The stock in Park Center, Inc., was owned by a number of doctors. Early in 1976 one of those doctors, a Dr. Burke, filed a petition in bankruptcy. As a result, Dr. Burke's shares in Park Center were sold at a creditor's sale. The corporation decided to purchase these shares. The remaining shareholders in Park Center loaned the corporation money to finance the purchase.

To repay these loans the Board voted to solicit additional investors through the sale of stock.

Dr. Jatoi, among other physicians, was contacted by members of the Board. She indicated a willingness to buy seven thousand shares at one dollar per share. Thereafter, in May of 1976 the Board met and in the course of its meeting approved Dr. Jatoi's offer to purchase seven thousand shares. This "acceptance" was never communicated to Dr. Jatoi. For several months Dr. Jatoi, still unaware of the resolution of the Board, continued to pursue the matter. She was repeatedly told that the Board would "be in touch" with her.

Three years later, in May of 1979 Dr. Jatoi became aware, for the first time, of the Board's resolution. In the interim the shares of Park Center, Inc. had split two for one. Dr. Jatoi, by letter dated May 22, 1979 indicated to the Board her recent discovery that the Board "approved of (her) subscription application", and that the "acceptance of my offer has never been communicated to me". Dr. Jatoi enclosed a check for seven thousand dollars, the original price for the shares, demanding Park Center, Inc. to honor its obligation by issuing 14,000 shares (doubled from seven thousand as a result of the two for one stock split). Park Center refused, and Dr. Jatoi brought this suit.

■ It is Park Center's contention that an acceptance is not binding until delivered to the offeror. We agree. This principle is so well established as to be beyond dispute.

17 Am.Jur.2d, *Contracts*, § 43 (1964) reads as follows:

> "Where an express acceptance is required by an offer, the fact of the acceptance must be communicated to the offeror by the offeree or his agent; a mere private uncommunicated assent will not effect a contract. For instance, a mere proposal to sell does not become a sale until accepted and notice of acceptance given the proposer."

17 C.J.S., *Contracts*, § 45, (1963) provides:

"Where the offerer, instead of offering to do something if the other party will perform, thus leaving the latter free to perform or not as he pleases, requires a reciprocal promise from the offeree, the latter must communicate his acceptance of the offer and thereby bind himself by an engagement from which he cannot recede or there will be no agreement; even a compliance with the terms of the offer will not suffice. Communication of acceptance in such a case is not only necessary to bind the offerer, but also to bind the offeree, and the offerer cannot, by a stipulation to that effect in the offer, make silence on the offeree's part an acceptance...."

Restatement of Contracts, § 64, (1932) reads as follows:

"An acceptance may be transmitted by any means which the offeror has authorized the offeree to use and, if so transmitted, is operative and completes the contract as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror, unless the offer otherwise provides."

Park Center solicited offers. Dr. Jatoi made an offer, which offer Park Center accepted. However, as Dr. Jatoi stated in her letter to Park Center, the acceptance was never conveyed to her. We find that Dr. Jatoi, in making her offer impliedly requested a return promise from Park Center to sell her the shares. Admittedly, the minutes of the Board's meeting contain a resolution adopted by the Board to sell the shares to Dr. Jatoi. However, it was necessary for the Board to do more than indicate its acceptance of Dr. Jatoi's offer to purchase than the passing of a resolution. Park Center was required to set in motion some means by which knowledge of that acceptance would come to Dr. Jatoi before any enforceable contract could arise. An acceptance which resides solely within the exclusive knowledge of the acceptor without being communicated to the offeror is ordinarily no binding acceptance. As stated in 1 Williston on Contracts, § 70 (3d ed. 1957):

"As has been seen the acceptance of a bilateral contract is not only a manifestation of assent to the proposition but is a giving of the return promise requested. To complete a contract, the offeror must always be given what he requests as the return for his promise and in an offer for a bilateral contract he requests either a promise in fact or an obligation in law. In order to complete a bilateral contract, therefore, on the former supposition the offeree must in fact make a promise to the offeror, and a promise, as the offeree should reasonably understand, is something which involves, if not communication, at least attempted communication."

■ Dr. Jatoi argues that an alternative form of acceptance may be applicable here, citing Tex.Bus.Corp.Act Ann. art. 2.14 (1980) which, in pertinent part provides:

"C) In the case of an existing corporation, acceptance [of a subscription] shall be effected by a resolution of acceptance by the board of directors *or* by a written memorandum of acceptance executed by one authorized by the board of directors and delivered to the subscriber or his assignee." (Emphasis added.)

We cannot agree with Dr. Jatoi's attempt to characterize her oral offer to purchase shares as a "subscription". Tex.Bus. Corp.Act Ann. art. 1.02(5) (1980) defines a subscription as "a memorandum in writing, executed before or after incorporation, wherein an offer is made to purchase and pay for a specified number of theretofore unissued shares of a corporation." Dr. Jatoi's offer is at least lacking the formality of being in writing, as required by statute.

We find an absence of a binding acceptance to Dr. Jatoi's offer to purchase seven thousand shares of Park Center, Inc. in that the acceptance was never relayed to Dr. Jatoi. We overrule each of Dr. Jatoi's points of error and affirm the judgment.