**Affirmed in part, Reversed and Remanded in part, and Memorandum Opinion filed April 23, 2019.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-17-00887-CV

---

### PAUL GETTY, Appellant

### v.

### TIM PERRYMAN, Appellee

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-48789**

---

### MEMORANDUM OPINION

This appeal arises from a final judgment after a jury verdict in favor of appellee Tim Perryman on his breach-of-contract claims. Appellant Paul Getty presents three issues: (1) whether the jury's finding that Getty entered into an agreement with Perryman was supported by "no evidence," or legally- and factually-insufficient evidence; (2) whether any such agreement between Getty and Perryman was supported by consideration; and (3) whether Perryman properly

segregated recoverable from nonrecoverable attorney's fees. We reverse only those portions of the trial court's judgment awarding Perryman his attorney's fees as to Getty and remand for a new trial on attorney's fees as so limited. We otherwise affirm the trial court's judgment as appealed.

## I.    BACKGROUND

Through Getty's brother, Perryman was introduced to Getty and Kelly Williams. With the encouragement of Getty, Williams, and "their attorney" Ralph Abercia, Perryman invested $125,000 in connection with a proposed transaction involving the release and shipment of a Russian tanker of mazut oil, a type of fuel oil, to China.

In a promissory note dated June 11, 2012, Williams, as president of GW Global, L.L.C., a Texas company located in Houston, promised to pay Perryman $525,000 for his "investment" within twenty days or upon closing of the "mazut oil" deal. If the transaction did not close, then Perryman's $125,000 would be refunded. On June 12, 2012, Perryman transferred $125,000 by wire into the IOLTA account of Abercia. That same day, $125,000 was transferred from Abercia's IOLTA account into the account of Sky Global, LLC, a Florida company. The principals of Sky Global were Charles Smith and Terry Feibus.

On November 27, 2012, Getty sent an e-mail to Perryman: "Kelly and I are very close to giving you an exact date to give you your money. We will give you an extra $25,000 for all of this inconvenience. Paul." That same day, Perryman replied to Getty, writing:

> Paul[,] what does very close mean like by Friday or next month[?] I feel as though you guys have used my money for other things th[a]n the deal we had for the fuel from Russia to China on the tax. I am not sure where my money is or what it was used for or if it was used. I would like to think it was sitting in an account and you guys think the deal is st[il]l

working and you could send to me upon request. But that seem[s] not to be the case. But you will have to answer that question. As I have said I am interested in doing some deals but I need better answers.

Please advise
Tim Perryman
[phone number]

Two days later, on November 29, Getty wrote in an e-mail to Perryman:

Tim, I want to assure you that we are not using your money for any other deals. Our Attorney sent the funds to consummate this deal. We have been trying for the last three months to either get the product or your money back. We talked to them yesterday and they promised we would have the money by next Wednesday. Kelly and I will pay you the money plus an extra $25,000 if he does not return the funds and will sue him for what he owes us. You are welcome to be a party to that suit. Believe me we are just as frustrated as you are! We are also very honest and will do what we say. We tried to call you to discuss the issues. We will keep you informed of our progress. Paul.

Perryman replied to this e-mail on January 8, 2013, writing: "Paul[,] can you update on the deal and my money options?" Getty replied to Perryman that he was "[i]n London and will call u Friday." Getty sent another e-mail to Perryman on January 14, writing: "Sorry, I was delayed in London. I will need to call you tomorrow as I am waiting for information from Charles [Smith]. Thanks for your patience! Paul." Perryman responded to Getty on January 29, writing: "Hey Paul[,] hope all is well. I am assuming all is good for this Friday for the money. Can you wire the money to my account?"

The "mazut oil" deal never closed, and Perryman never received any money from GW Global, Williams, Getty, or otherwise. In August 2015, Perryman brought suit against GW Global, Williams, Getty, and Abercia. Perryman amended his suit to add Sky Global, Smith, and Feibus (together, the "Florida defendants"). Perryman brought breach-of-contract claims against GW Global, Williams, and Getty;

restitution, and breach-of-fiduciary-duty and equitable-disgorgement claims against Abercia and the Florida defendants; conversion claims against the Florida defendants; and fraud and civil-conspiracy[1] claims against all the defendants. Perryman requested attorney's fees under section 38.001(8) of the Texas Civil Practice and Remedies Code.

GW Global filed a counterclaim against Perryman, alleging that he charged usurious interest in the note.[2] Abercia also filed a counterclaim against Perryman, alleging that Perryman engaged in a "conspiracy to fraudulently blame" Abercia for his "failed investment." The trial court granted Abercia's motion to nonsuit his counterclaim.

The Florida defendants did not appear. The trial court granted Perryman an interlocutory default judgment against the Florida defendants on liability, reserving its ruling on damages.

The case proceeded to a jury trial. The jury returned its verdict, finding in pertinent part:

- Williams and Perryman agreed that Williams would pay Perryman $125,000 if the "mazut oil" transaction failed to close;
- GW Global and Perryman agreed that GW Global would pay Perryman $125,000 if the "mazut oil" transaction failed to close;
- Both Williams and GW Global failed to comply with the agreement;
- The sum of $125,000 paid in cash would fairly and reasonably compensate Perryman for his damages caused by each of

---

[1] Civil conspiracy is not an independent tort, but rather "is derivative of an underlying tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, —S.W.3d—, No. 17-0630, 2019 WL 1495211, at *4, *7 (Tex. Apr. 5, 2019).

[2] At the close of evidence, the trial court found "as a matter of law that the contract is not in violation of the usury laws." In the final judgment, the trial court stated that GW Global's counterclaim was dismissed on the merits.

Williams's and GW Global's failures to comply;

- In November 2012, Getty agreed with Perryman that Getty would pay $150,000 to Perryman if the funds paid by Perryman were not returned to him;

- Getty failed to comply with the agreement;

- The sum of $150,000 paid in cash would fairly and reasonably compensate Perryman for his damages that resulted from Getty's failure to comply;

- A relationship of trust and confidence existed between Perryman and Abercia at the time Perryman transferred funds to Abercia's trust account and Abercia transferred the funds out of his trust account, but Abercia did not fail to comply with his fiduciary duty to Perryman;

- None of the defendants committed fraud against Perryman at the time he contributed funds for the "mazut oil" transaction; and

- $80,000 was a reasonable fee for the necessary services of Perryman's attorney for preparation of trial and through completion of trial-court proceedings, $10,000 for representation through appeal to the court of appeals, and $10,000 for representation through oral argument and completion of proceedings in the Supreme Court of Texas.

Getty filed a motion to disregard the jury's findings related to the November 2012 agreement and Perryman's attorney's fees. The trial court denied Getty's motion. On October 18, 2017, the trial court signed its final judgment consistent with the jury's findings.[3]

---

[3] The final judgment awarded Perryman $217,517.11 in damages ($125,000), prejudgment interest ($12,517.11), and Perryman's "reasonable attorney's fees through trial" ($80,000), imposed jointly and severally against GW Global, Williams, and Getty. The conditional awards for appellate attorney's fees likewise were imposed jointly and severally against GW Global, Williams, and Getty. GW Global did not appeal. Williams voluntarily dismissed his appeal.

The final judgment also awarded Perryman $27,503.42 in additional damages ($25,000) and additional prejudgment interest ($2,503.42), imposed only against Getty.

The final judgment incorporated the interlocutory default judgment against the Florida defendants and awarded Perryman $387,517.11 in damages ($125,000), prejudgment

5

Getty filed a motion for new trial, which was overruled by operation of law. Getty timely appealed.

## II.    ANALYSIS

### A. The jury's finding that a November 2012 agreement existed between Getty and Perryman

In the charge, the jury was asked: "In November 2012, did Paul Getty agree with Tim Perryman that Paul Getty would pay $150,000 to Tim Perryman if the funds paid by Tim Perryman were not returned to Tim Perryman?" The jury answered, "Yes."[4]

In his first issue, Getty argues there is no evidence, or the evidence was legally- and factually-insufficient to support this finding. Primarily, Getty contends even if the two emails he wrote to Perryman on November 27 and 29, 2012, constituted an offer or offers that Getty would pay Perryman $150,000, Perryman did not sufficiently accept such offer.

Contrary to Getty's position, the e-mail string between Getty and Perryman does not "as a matter of law" or "unequivocally establish" that "there was no November 2012 agreement between Perryman and Getty." Getty relies on *Jatoi v. Park Center, Inc.*, 616 S.W.2d 399 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.). We find *Jatoi* distinguishable. *Jatoi* involved a situation in which the stock in Park

---

($12,517.11), and exemplary damages ($250,000). The Florida defendants did not appeal.

[4] Getty points out that "[i]n his pleadings Perryman characterized Getty's November 2012 e-mail as a 'novation or modification' of the [promissory note]," perhaps implying that the issue submitted to the jury was defective. However, Getty did not object to the charge on this basis. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." (citing Tex. R. Civ. P. 272, 274, 278, 279)). We review the sufficiency of the evidence to support the question the jury was asked to answer, which was not predicated on the jury's answer to any question related to the note and which related to a distinct agreement between Getty and Perryman.

Center was owned by a number of doctors. *Id.* at 400. One doctor filed for bankruptcy, and Park Center purchased those shares at a creditor's sale and then solicited additional investors. *Id.* Dr. Jatoi conveyed to the Park Center board her willingness to buy 7,000 shares for $7,000. *Id.* The board met and approved Jatoi's offer, but never communicated its acceptance to Jatoi. *Id.* Jatoi pursued the matter for several months and was told the board would be in touch. *Id.* Three years later, Jatoi learned of the board's resolution. *Id.* In the meantime, the shares had split two for one. *Id.* Jatoi sent the board a check for $7,000 and demanded 14,000 shares, writing in her letter that "the acceptance of my offer has never been communicated to me." *Id.* However, Park Center refused. *Id.* The Fort Worth Court of Civil Appeals affirmed summary judgment in favor of Park Center, explaining:

> Park Center was required to set in motion some means by which knowledge of that acceptance would come to Dr. Jatoi before any enforceable contract could arise. An acceptance which resides solely within the exclusive knowledge of the acceptor without being communicated to the offeror is ordinarily no binding acceptance.

*Id.* at 401.

Unlike in *Jatoi*, Perryman communicated with Getty the same day of Getty's initial e-mail and just a little over a month after Getty's second e-mail, not three years later. Perryman's January 8, 2013, response to Getty requesting an "update on the deal and my money options" came on the heels of Getty's offer, which did not contain a time of expiration. *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("An offeree's power of acceptance is terminated at the time specified in the offer, or if no time is specified, it is terminated at the end of a reasonable time."). A few weeks later, Perryman e-mailed Getty that Perryman "assume[d] all is good for this Friday for the money" and asked if Getty could "wire the money to [Perryman's] account." The

"deal" and "the money" in Perryman's e-mails reasonably could have referred to Getty's $150,000 offer to pay Perryman the $125,000 Perryman had paid into the mazut-oil deal, "plus an extra $25,000." Perryman's assumption that "all was good" for payment of "the money" by wire payment reasonably could be interpreted as his acceptance or confirmation of his acceptance of Getty's $150,000 offer. We disagree with Getty's contention that Perryman had to respond with "something like 'where's my $150,000?'" to constitute acceptance. *See City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011) (noting that "no particular words are required to create a contract"); *cf. Advantage Physical Therapy*, 165 S.W.3d at 25 (noting lack of written response from offeree indicating that "this is fine," "this is okay with us," or "keep us informed" evidenced lack of acceptance).

Moreover, at trial, both Getty and Perryman testified that Getty never disclaimed or disavowed the obligation to pay Perryman. *See Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.) (evidence that offeror never stated document was not employment agreement supported finding that "there was a 'meeting of the minds,' and therefore an offer and acceptance"). Getty also testified: "That's what I was doing, trying to get [Perryman's] money back."

We also disagree with Getty's contention that Perryman "was only trying to get his $125,000 back." Although Perryman testified that he sought $125,000 in certain communications with Getty and Williams after Perryman found out the "mazut oil" transaction was not going to close, Perryman also stated that "later on" Getty and Williams "agreed to increase the principal payment to [Perryman] from 125,000 to 150,000" and "were going to pay [Perryman] 150 instead of 125 because of the trouble they put [Perryman] through."

Construing the evidence in the light most favorable to the jury's verdict, we conclude there is legally-sufficient evidence to uphold the jury's finding. *See City of*

8

*Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). Even considering all the evidence both in favor of and contrary to the jury's finding, either party's position is plausible. Because the evidence is not so weak such that the finding in favor of Perryman is clearly wrong and manifestly unjust, we also conclude the evidence is factually sufficient. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We overrule Getty's first issue.

## B. Waiver of lack of consideration

In his second issue, Getty argues that even if there had been a November 2012 agreement between Getty and Perryman, there was no consideration to support it and it would not have been enforceable. Perryman responds that because Getty did not plead or secure a jury finding on lack of consideration, he waived the issue.

Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997), *superseded by statute on other grounds as stated in Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Lack of consideration must be raised by a verified pleading or else it is waived. Tex. R. Civ. P. 93(9); *see Coastal Terminal Operators v. Essex Crane Rental Corp.*, No. 14-02-00627-CV, 2004 WL 1795355, at *6 (Tex. App.—Houston [14th Dist.] Aug. 12, 2004, pet. denied) (sub. mem. op.).

In his reply brief, Getty acknowledges he did not plead lack of consideration but asserts that the issue was tried by consent. Based on our examination of the record, we cannot agree.[5] Therefore, Getty waived this issue.

---

[5] Although Getty points to his testimony that he never received or controlled any of Perryman's investment money, this does not demonstrate trial by consent of lack of consideration. Getty did not request submission of a jury instruction or question on consideration. And the only

9

We overrule Getty's second issue.

## C. Segregation of Perryman's attorney's fees

Because attorney's fees are only recoverable pursuant to a contract or statute, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *see Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) ("[A] claimant must segregate legal fees accrued for those claims for which attorney[']s fees are recoverable from those that are not."). Texas courts recognize a narrow exception "when discrete legal services advance both a recoverable and unrecoverable claim" and thus "are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14; *see In re Lesikar*, 285 S.W.3d 577, 585 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("If a legal service necessary to the litigation of a claim for which attorneys' fees are available also advanced a claim for which attorneys' fees are not recoverable, then the exception to the general fee-segregation rule applies, and the amount of time or money that was reasonable to expend in performing the service need not be segregated among the claims it advanced."). The burden is on the party seeking to recover attorney's fees to show that segregation is not required. *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

---

mention during closing arguments of consideration—not lack of consideration—was by counsel for Perryman:

- We told you that Mr. Perryman forebeared [sic] at that time or held back with going forward with legal remedies at the time.

- [W]ith Paul Getty, relating back to the communications that he sent in November of 2012, to the same effect that, "Hey, we know there's been an inconvenience and delay and so forth, so instead of just paying you $125,000, we're going to pay you $150,000."

If any attorney's fees relate solely to a claim for which attorney's fees are unrecoverable, then a claimant must segregate recoverable from unrecoverable fees. *Chapa*, 212 S.W.3d at 313. Segregation may be sufficiently established if an attorney testifies that a given percentage of the time worked would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted. *State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 102 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

In his third issue, Getty challenges Perryman's award of attorney's fees based on lack of proper segregation between recoverable and unrecoverable fees. There is no dispute that Perryman cannot recover attorney's fees for any claim aside from his breach-of-contract claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8). As a result, Perryman generally was required to segregate fees incurred in connection with his tort claims against GW Global, William, and Getty and against the Florida defendants against whom he recovered a default judgment, and in defense of GW Global's and Abercia's counterclaims.

Counsel for Perryman testified regarding segregation of his attorney's fees. "[B]ecause of" the segregation requirement, counsel for Perryman explained he made an adjustment to his total amount of fees of "approximately 5 percent . . . to represent the attorney time that had to be spent on preparing the defense to the counterclaims versus the attorney time spent on the actual preparation of the breach of contract claim." Counsel for Perryman further testified that "[i]t is impossible in this case to segregate the fees incurred in the breach of contract claim from the fees incurred in the fraud, conspiracy and breach of fiduciary claims because everything is very closely intertwined in one set of facts."

On cross-examination, counsel for Perryman acknowledged that it was possible to segregate out certain time he spent to obtain a default judgment against

11

the Florida defendants. Counsel for Perryman agreed that at least four time entries and part of a fifth one involving "bulk billing" were capable of adjustment. Counsel for Perryman further admitted that he did "[n]ot really" try and made "no major effort" to segregate and identify the services he performed in furtherance of the contract claims as opposed to the tort claims. Counsel for Perryman stated that making adjustments for segregation "would not be feasible in this case . . . because I would be spending more time dividing up time entries than representing the client." Getty objected to submission of the jury question on attorney's fees based on lack of proper segregation and included this objection in his motion to disregard jury findings.

While counsel for Perryman made reasonable efforts to segregate and provided evidence that five percent of his fees was for work on the defense of counterclaims, *see Hanson*, 500 S.W.3d at 102, he did not make similar reasonable efforts to segregate his fees for work on Perryman's tort claims. For example, even though counsel for Perryman admitted, based on his invoice, that it was possible to segregate time entries solely relating to the Florida defendants, counsel for Perryman did not do so.[6] Moreover, counsel for Perryman did not offer testimony that all the legal services which advanced the unrecoverable tort claims also advanced the recoverable contract claims. *See Lederer v. Lederer*, 561 S.W.3d 683, 703 (Tex. App.—Houston [14th Dist.] 2018, no pet.). According to counsel for Perryman, even his time spent on "major projects" such as responses to Getty's and Abercia's no-evidence motions for summary judgment, which motions only concerned Perry's unrecoverable tort claims, could not be segregated because they involved "briefing one set of facts that were very intertwined." "But, intertwined facts alone do not

---

[6] In addition, the invoice contains other entries that either solely involved services related to the claims against the Florida defendants or contained such discrete services as part of "bulk billing."

make fees for unrecoverable claims recoverable." *Id.*; *see Milliken v. Turoff*, No. 14-17-00282-CV, 2018 WL 1802207, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2018, no pet.) (mem. op.) (testimony that counsel "had not segregated fees among the various causes of action alleged because 'they're all based on the same set of facts, the same issues'. . . has not been the proper standard since *Chapa* was decided"). Finally, counsel for Perryman admitted that he did not really try to segregate Perryman's unrecoverable fees on his tort claims from his recoverable fees on his contract claims. In other words, counsel for Perryman failed to perform an inquiry sufficient to determine that an exercise in segregation was impossible.

Perryman responds that his post-judgment remittitur of $18,425 of the $80,000 attorney's-fee award through trial cured any error and essentially moots any complaint about such award. Getty notes that he did not accept or consent to this remittitur. However, even presuming without deciding that such a cure could be accomplished by remittitur by either the trial court or by this court, Perryman's notice of remittitur provided no explanation of how the amount to be remitted was determined or supported segregation of unrecoverable attorney's fees.

*Chapa* guides our determination here: "[W]hen, as here, it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required and the jury ought to decide the rest." 212 S.W.3d at 314. On this record, we therefore sustain Getty's third issue. Because Perryman presented some evidence regarding the total amount of attorney's fees he incurred, he did not forfeit his right to recover attorney's fees by failing to properly segregate them. *See id.*

### III.   CONCLUSION

Accordingly, we reverse the portions of the trial court's judgment awarding

Perryman attorney's fees as to Getty,[7] affirm the remainder of the judgment as challenged on appeal, and remand the case to the trial court for a new trial limited to reasonable and necessary attorney's fees as to Getty. *See* Tex. R. App. P. 43.2; *Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 515 (Tex. App.—El Paso 2014, pet. denied) (reversing and remanding appellate attorney's fees where appellant was successful on segregation issue).


/s/ Charles A. Spain
   Justice


Panel consists of Justices Christopher, Bourliot, and Spain.

---

[7] GW Global and Williams did not appeal the final judgment. Therefore, the attorney's-fee awards to Perryman imposed jointly and severally against GW Global and Williams, remain intact.